WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Baltazar Eduardo Barrera, on behalf of himself and others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>US Airways Group, Inc., a Delaware corporation; and US Airways, Inc., a Delaware corporation,<br><br>Defendants. | No. CV-2012-02278-PHX-BSB<br><br>**ORDER** |

Plaintiff Baltazar Eduardo Barrera (Plaintiff) has filed a motion for preliminary collective action certification and court supervised notice of a pending collection action, pursuant to 29 U.S.C. § 216(b) of the Fair Labor Standards Act (FLSA). (Doc. 39.) Plaintiff asks the Court to conditionally certify a collective action based on allegations of underpayment of overtime wages to security guards.[1] (*Id.*) Defendant US Airways, Inc. (U.S. Airways) opposes the motion.[2] (Doc. 44.) For the reasons set forth below, the Court grants Plaintiff's motion.

---

[1] Plaintiff uses the term "security guard" to refer to the position he and the putative class members held with US Airways, while Defendant uses the term "security officer" to refer to these job positions. The Court uses the term security guard, but does not determine whether the different terminology has any significance.

[2] The Complaint names US Airways Group, Inc. and US Airways, Inc. as defendants. Pursuant to the parties' stipulation, US Airways Group, Inc. was dismissed without prejudice pursuant to Fed. R. Civ. P. 41(a)(1)(A)(ii). (Doc. 25.)

**I.      Plaintiff's Claims**

From approximately August 2009 through May 2012, Plaintiff worked for Defendant U.S. Airways as a security guard. (Doc. 1 at 3.) Plaintiff's "primary duty was to provide security at multiple buildings owned by US Airways." (*Id*. at 4.) Plaintiff performed tasks such as: "walking around the areas and confirming that only authorized personnel were in secured areas"; admitting employees and visitors to buildings; answering internal and external phone calls; monitoring fire panels and video monitors; and completing daily reports. (Doc. 1 at 4). When performing his work, Plaintiff was not required to "board, inspect, maneuver, operate, manipulate, control, alter, repair, handle, steer, direct, guide or otherwise interact with any aircraft." (*Id.*).

Plaintiff asserts that while he was employed by US Airways, he "regularly worked over forty (40) hours per week." (Doc. 1 at 5). Plaintiff was sometimes, but not always, paid time and a half for hours he worked in excess of forty hours in a week. (*Id*.) Plaintiff claims that Defendant's failure to pay him all his claimed overtime wages was a willful violation of the FLSA, and he seeks to recover unpaid overtime for three years. Plaintiff filed an FLSA collective action complaint on behalf of himself and all other similarly situated employees. (Doc. 1 at 1.) Since the filing of the complaint, two individuals have "opted in" as plaintiffs. The opt-in plaintiffs are Donald Vitale Jr. and Susan S. Jovanovic. (Docs. 5, 20.)

**II.     Procedures for Certifying FSLA Collective Actions**

Under the FLSA, covered employees are entitled to overtime wages at a rate of one-and-one-half times their regular rate for hours worked in excess of forty hours per week, unless an exemption applies. *See* 29 U.S.C. § 207. Under Title 29 U.S.C. § 216(b), an employee may bring an action on behalf of himself and other similarly situated employees to recover unpaid overtime wages. "In order to make certain that potential collective class members are notified of the action and their right to take part, the courts may authorize the issuance of notice by the named plaintiff in an

FLSA action to all other putative class members." *Bollinger v. Residential Capital, LLC*, 761 F. Supp. 2d 1114, 1119 (W.D. Wash. 2011).

Unlike class actions brought under Rule 23 of the Federal Rules of Civil Procedure, individuals who wish to join a collective action must affirmatively opt-in to the class by filing a written consent with the court. *See* 29 U.S.C. § 216(b) (an employee cannot be a plaintiff "unless he gives his consent in writing to become such a party and such consent is filed in the court").

"The district court has discretion to determine whether a collective action is appropriate." *Romero v. Producers Dairy Foods, Inc.*, 235 F.R.D. 474, 481 (E.D. Cal. 2006) (citing *Leuthold v. Destination Am., Inc.,* 224 F.R.D. 462, 466 (N.D. Cal. 2004)). To certify a collective action under the FLSA, the court must determine whether plaintiff and the potential opt-in members are "similarly situated" within the meaning of § 216(b). *Romero*, 235 F.R.D. at 481. The FLSA does not define the term "similarly situated" and the Ninth Circuit has not construed this term. *Wood v. TriVita, Inc.*, 2009 WL 2046048, at *2 (D. Ariz. Jan. 22, 2009).

Federal district courts have taken at least three different approaches to making a collective action determination: "(1) a two-tiered case-by-case approach [the ad hoc, two-tiered, or two-step approach], (2) the incorporation of the requirements of Rule 23 of the current Federal Rules of Civil Procedure, or (3) the incorporation of the requirements of the pre–1966 version of Rule 23 for 'spurious' class actions." *Romero*, 235 F.R.D. at 481 (citing *Thiessen v.GE Capital Corp.*, 267 F.3d 1095, 1103 (10th Cir. 2011)). A majority of courts, including district courts within the Ninth Circuit, have adopted the two-tiered approach. *Romero*, 235 F.R.D. at 481-82; *see also Hipp v. Liberty Nat'l Life Ins. Co.*, 252 F.3d 1208, 1219 (11th Cir. 2001); *Stickle v. SCI Western Mkt. Support Ctr.*, 2009 WL 3241790, *2 (D. Ariz. Sept. 3, 2009); *Hutton v. Bank of Am.*, 2007 WL 5307976, at *1 (D. Ariz. Mar. 31, 2007); *Edwards v. City of Long Beach*, 467 F. Supp. 2d 986, 990

(C.D. Cal. 2006); *Leuthold*, 224 F.R.D. at 467.  In this case, the Court will follow the two-tiered approach.[3]

Under this approach, at the first, or the "notice stage," the court determines whether the proposed class members are similarly situated employees and therefore should be notified about the pending action.  *See Hoffman–La Roche v. Sperling*, 493 U.S. 165, 169 (1989).  The court makes this determination based on the pleadings and any declarations that have been submitted.  *Hipp*, 252 F.3d at 1217-18 (citing *Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1213-14 (5th Cir. 1995)).  The plaintiff must demonstrate a reasonable basis for asserting that a proposed class of employees is similarly situated.  *Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233, 1261 (11th Cir. 2008).  The plaintiff must show some "factual nexus which binds the named plaintiffs and the potential class members together as victims of a particular alleged policy or practice."  *Taylor v. Autozone, Inc.*, 2011 WL 2038514, at *1 (D. Ariz. May 24, 2011) (citations omitted).  This is a lenient standard because the court has little evidence at this stage and "the usual result is conditional class certification."  *See Leuthold*, 224 F.R.D. at 467.

Although the court does not make factual determinations at this first stage, "neither the remedial purpose of the FLSA, nor the interests of judicial economy, would be advanced if [the court] were to overlook facts which generally suggest that a collective action is improper."  *West v. Border Foods, Inc.*, 2006 WL 1892527, at *7 (D. Minn. Jul.

---

[3] In making the preliminary collective action determination, the Court will not consider Defendant's argument that Plaintiff Barrera is unfit to serve as a class representative.  (Doc. 44 at 27.)  A challenge to the adequacy of the class representative is based on the prerequisites of Rule 23 for class actions, which do not apply in the two-tiered approach.  *See Thiessen*, 267 F.3d at 1105 (noting that the ad hoc approach to determining whether plaintiffs were similarly situated for purposes of § 216(b) "is not tied to the Rule 23 standards"; *see also Hoffman v. Sbarro, Inc.*, 928 F. Supp. 249, 262 (S.D.N.Y. 1997) ("Section 216(b), which provides for collective actions under the FLSA, is silent on the issue of the adequacy of representation, nor does it direct courts to follow the dictates of Rule 23 in certifying a class.  Consequently, the prevailing view among federal courts, including courts in this Circuit, is that § 216(b) collective actions are not subject to Rule 23's strict requirements, particularly at the notice stage.").

1  10, 2006). If the plaintiff demonstrates that the proposed class members are similarly situated, the court conditionally certifies the class and directs notice to the potential class members informing them of their right to join the collective action. After the notification period ends, the court proceeds to the second step of the certification process. *See Stickle*, 2009 WL 3241790, at *2 (discussing two-step certification process).

The second step of the certification process occurs at or close to the completion of discovery and is generally prompted by a defendant's motion for decertification. At that stage, "the court . . . makes a second determination, utilizing a stricter standard of 'similarly situated.'" *Thiessen*, 267 F.3d at 102–03 (the court reevaluates, usually prompted by a motion for decertification, the "similarly situated" question at a later stage, once discovery has produced sufficient information regarding the nature of the claims). At the second stage, the "court reviews several factors, including: (1) disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to defendant which appear to be identical to each plaintiff; [and] (3) fairness and procedural considerations . . . ." *Id. at* 1103. At all times, the plaintiff bears the burden of proving that he meets the "similarly situated" requirement. *See Hipp*, 252 F.3d at 1217. The court does not review the merits of the plaintiff's claims at either stage of the certification process. *See Gieske v. First Horizon Home Loan Corp.*, 408 F. Supp. 2d 1166 (D. Kan. 2006).

**III.    Determining Whether Proposed Class Members are "Similarly Situated"**

Plaintiff seeks conditional certification of a class of "all current and former security guards" who worked for US Airways at any time between October 24, 2009 and the present. (Doc. 39 at 1.) "At this stage, the court 'requires nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy, or plan.'" *Wood*, 2009 WL 204648, at *3 (quoting *Thiessen*, 267 F.3d at 1102); *see also Hoffman*, 982 F. Supp. at 261.

To establish that he is similarly situated to other potential plaintiffs, Plaintiff has submitted his declaration and the declarations of Susan Jovanovic and Donald Vitale Jr.

1 (Doc. 39, attachments 2, 3, and 4.)  The declarants state that they were security guards for Defendant, and that their main duties included "monitor[ing] foot traffic coming in and out of specified areas, checking that all employees have and are displaying a US Airways Badge," "answering phones and greeting guests or clients of US Airways," performing "foot patrol," and "monitoring the Delivery Gate."  (Barrera Decl. ¶¶ 3-5; Jovanovic Decl. ¶¶ 3-5;Vitale Decl. ¶¶ 3-5.)

They further state that (1) Defendant classifies all security guards as exempt employees, (2) they all consistently and regularly worked over forty hours per week, (3) they attended the same orientation program and received the same employee handbook upon their initial employment, (4) they were required to use US Airways equipment and procedures, (5) they were required to wear a company uniform and ID badge at all times, (6) their hours were tracked in the same manner, (7) they received their schedules in the same manner, (8) Defendant determined their hours of work and their assignments, and (9) they were subject to Defendant's overtime policy that applied to all security guards. (Doc. 52 at 4; Barrera Decl. ¶¶ 10-28; Jovanovic Decl. ¶¶ 10-28;Vitale Decl. ¶¶ 10-28.)[4]

---

[4]  Defendants object to the declarations arguing that they are based on hearsay and that the declarants lack personal knowledge.  (Docs. 46, 47, 48.)  These objections are without merit.  In deciding a motion for conditional certification, the court may consider affidavits and declarations in support of plaintiff's allegations.  *See Baldozier v. Am. Fam. Mut. Ins. Co.*, 375 F. Supp. 2d 1089, 1093 (D. Colo. 2005) (granting motion for conditional certification based on substantial allegations and plaintiff's declarations).

The declarations are sufficient to support a motion for conditional certification of a collective action.  "A reasonable inference from the evidence submitted is that the plaintiff, as . . . as an employee of defendant, would learn, during the normal course of his employment, how the employer operates, where the employer operates, what other similar employees are doing, and where they are doing the[ir] jobs."  *Aguayo v. Oldenkamp Trucking*, 2005 WL 2436477, at *4 (E.D. Cal. Oct. 3, 2005).  Moreover, "affidavits submitted in support of a motion for conditional certification pursuant to § 216(b) need not meet the standards set forth in Rule 56(e.)  *See Stickle*, 2009 WL 3241790, at *5-6 (citing *White v. MPW Indus. Servs. Inc.*, 236 F.R.D. 363, 368 (E.D. Tenn. 2006)).

1    In its response, Defendant opposes the request for conditional certification and
2 argues it is exempt from the overtime requirements of the FLSA under the exemption
3 applicable to air carrier employees subject to the Railway Labor Act (the carrier by air
4 exemption) and, therefore, conditional certification is not appropriate.  *See* 29
5 U.S.C. § 213(b)(3) (providing that "[m]aximum hour requirement provisions of section
6 207 of this title shall not apply with respect to . . . any employee of a carrier by air
7 subject to the provisions of title II of the Railway Labor Act."). Defendant argues that
8 this defense precludes conditional certification because it requires a fact-specific inquiry
9 to determine whether the exemption applies to each plaintiff. Defendant also argues that
10 the prospective plaintiffs are not similarly situated because different types of security
11 guards perform different functions in different locations.

12    To support its arguments that Plaintiff and the prospective plaintiffs are not
13 similarly situated in their job duties or in the potential application of the carrier by air
14 exemption to their claims, Defendant states that it employs several different types of
15 security guards who perform different functions, work at different locations, and may be
16 compensated differently.  The various types of security guards include: (1) stationary
17 security guards, (2) roving security guards, and (3) lead security guards (Doc. 44 at 10-
18 11.) Defendant's opposition to Plaintiff's motion includes a lengthy discussion of these
19 various security guards' duties and the locations to which they are assigned. (*Id*. at 3-16.)
20 Defendant argues that, because the Court will need to conduct an individual inquiry for
21 each putative class member to determine "the full factual circumstances of when and
22 where" each employee performed his work, this case is not suitable for conditional class
23 certification. (Doc. 44 at 7 (citing Doc. 18 at 4).)

24    Defendant relies on *Morisky v. Pub. Serv. Elec. and Gas Co*., 111 F. Supp. 2d 493,
25 499 (D. N.J. 2000), in which the court determined that collective treatment was improper
26 for potential plaintiffs who could be exempt from overtime compensation as
27 administrative employees because "[t]he exempt or non-exempt status of potentially
28 hundreds of employees would need to be determined on a job-by-job, or more likely, an

1      employee-by-employee basis." *Id.* In that case, there were seven named plaintiffs who
2      held several different job titles, or had the same job titles but performed different types of
3      duties. The court found that the plaintiffs failed to show that their job responsibilities
4      were the same or similar to the other employees.

5      Furthermore, unlike the procedural posture of this case, the court in *Morisky* was
6      addressing certification at step two, after the plaintiffs had already opted in. Thus, the
7      parties had conducted discovery and defendant produced employee questionnaires that
8      showed a wide divergence of positions and job duties among the class members.
9      Because the *Morisky* decision involved step two of the certification process, when the
10     court employs a stricter standard of "similarly situated," it is not helpful to the Court's
11     first-step determination, which is made under a lenient standard.

12     Defendant also relies on *Trinh v. JP Morgan Chase & Co.*, 2008 WL 1860161
13     (S.D. Cal. Apr. 22, 2008), which is also distinguishable from this case. There, the court
14     denied conditional certification of a class of all current and former JP Morgan loan
15     officers in California, and nationwide, who did not receive overtime compensation during
16     the three years preceding the lawsuit. *Id.* at *1. The court found that conditional
17     certification was not appropriate because determining whether the individuals who
18     comprised the "broad class" of loan officers across the country were exempt would
19     involve a fact-intensive inquiry to determine whether any one of several exemptions, or a
20     combination of exemptions, applied to each individual. *Id.* at 4. Unlike *Trinh*, Defendant
21     in this case asserts that one, not multiple, exemptions may apply and the putative class
22     here is limited geographically to Defendant's current and former security guards who
23     performed their duties "in Tempe, [Arizona] or less than 10 miles away at the airport."
24     (Doc. 52 at 3.)

25     Although Plaintiff does not dispute that there may be some variation between the
26     security guards' job responsibilities, Plaintiff argues that Defendant has "artificially
27     created job descriptions," and that the distinctions between how stationary, roving, and
28     lead security guards perform their duties are "miniscule." (Doc. 52 at 3.) Plaintiff argues

- 8 -

that the members of the proposed class of security guards are similarly situated because they were all security guards whose primary duties included "monitoring and security functions for US Airways either in Tempe or less than 10 miles away at the airport." (Doc. 52 at 3.) Plaintiff further argues that the putative class members performed the same general job duties and were subject US Airways' policy of treating security guards as exempt under the FLSA and not paying overtime wages.

Plaintiff also argues that an in-depth inquiry into the whether the carrier by air exemption applies to each category of security guard is inappropriate at this preliminary stage. The Court agrees. The Court does not resolve factual disputes regarding the security guards' job descriptions or job duties at this first step of the certification process. *See Barras v. Dicks Sporting Goods, Inc*., 456 F. Supp. 2d 224, 230 (W.D.N.Y. 2006) ("It is not the court's rule to resolve factual disputes . . . at the preliminary certification stage of an FLSA collection action). *Brasfield v. Source Broadband Servs*, LLC, 2008 WL 2697261, at *2 (W.D. Tenn. Jun. 3, 2008) ("At this first stage, the court does not resolve factual disputes, decide substantive issues going to the ultimate merits, or make credibility determinations." ).

Additionally, the potential applicability of an FLSA exemption does not preclude conditional certification. *See Neary v. Metro. Prop. and Cas. Ins. Co*., 517 F. Supp. 2d 606, 620 (D. Conn. 2007) ("Defendant's argument that in determining whether its claims of applicability of the administrative exemption is valid, individualized inquiry is necessary, does not preclude certification at this first stage"); *White*, 236 F.R.D. at 372-73 (listing cases "in which courts have determined that the potential applicability of an exemption is not an issue at the notice stage of [the] analysis, but rather is an issue for the second stage"); *Austin v. CUNA Mut. Ins. Soc*., 232 F.R.D. 601, 606 (W.D. Wis. 2006) (finding that potential application of the 'white collar exemption' to the FLSA's overtime compensation requirement," was not properly raised during first stage certification and did not defeat conditional certification); *Moss v. Crawford & Co*., 201 F.R.D. 398, 410-11 (W.D. Pa. 2000) (defendant's assertion of exemption defense did not preclude

conditional certification); *Ingram v. Coach USA, Inc.*, 2008 WL 281224, at *7 (D. N.J. Jan. 28, 2008) (declining to consider at the conditional certification stage the defendant's argument that certain employees "should be exempt pursuant to the motor carrier exemption").

Therefore, the Court concludes that the potential applicability of the carrier by air exemption, and any individualized inquiry that may be necessary to determine the applicability of that exemption, do not preclude conditional certification in this case. The Court also finds that, under the lenient standard of conditional certification, Plaintiff has demonstrated a reasonable basis for asserting that the putative class members are similarly situated because they performed similar duties in a similar geographic area, and regularly worked over forty hours a week, but did not receive overtime pay.

Any variation in the putative class members' job responsibilities is a factor to be considered at the second stage of the analysis after completion of discovery. *See Renfro v. Spartan Computer Servs, Inc.*, 243 F.R.D. 431, (D. Kan. 2007) (conditionally certifying a collective action under the FLSA despite variations in putative class members job duties). "While any differences among plaintiff and the opt-ins may be relevant after discovery is completed and the court makes a conclusive determination of whether the plaintiffs are similarly situated upon revisiting the certification issue, such differences are simply not relevant at the notice stage when plaintiff, as here, has set forth substantial allegations that plaintiffs were subject [to a policy of not paying overtime wages]." *Williams v. Sprint/United Mgmt. Co*., 222 F.R.D. 483,487 (D. Kan. 2004) (finding conditional certification in ADEA case, which adopts 29 U.S.C. § 216(b), appropriate despite differences between the opt-ins' length of service, performance ratings, positions held, managers, and terminations).

Courts have held that "'[g]enerally, where putative class members are employed in similar positions, the allegation that defendants engaged in a pattern or practice of not paying overtime is sufficient to allege that plaintiffs were together the victims of a single decision, policy, or plan.'" *Daugherty v. Encana Oil & Gas, Inc.*, 838 F. Supp. 2d 1127,

1133 (D. Colo. 2011) (quoting *Renfro*, 243 F.R.D. at 433). Thus, Plaintiff's allegation that he and the potential opt-in plaintiffs were all subject to the same corporate policy of not being paid overtime and performed similar job duties in similar geographic locations is sufficient to support conditional certification of a collective action at this stage of the litigation.

**IV.    Potential Plaintiffs' Limited Interest in the Joining Collective Action**

Defendant also argues that the Court should not conditionally certify a collective action because there are few other potential plaintiffs who want to join this litigation. (Doc. 44 at 27.) As Defendant notes, only two additional plaintiffs have opted-in. Defendant also relies on the declarations of numerous current US Airways' security guards to assert that, because there is insufficient interest in this litigation, the Court should deny conditional certification. Defendant contends that Plaintiff must offer some evidence that there are a number of other employees who may desire to opt-in. Defendant relies upon cases from the Middle District of Florida to support this argument. (Doc. 44 at 27, compendium 2, Exs. A-W (citing *Rodgers v. CVS Pharmacy, Inc.*, 2006 WL 752831, at *4 (M.D. Fla. Mar. 23, 2006) and *Mackenzie v. Kindred Hosps., East, LLC*, 276 F. Supp. 2d 1211, 1220 (M.D. Fla. 2003).)

The "additional requirement at the notice stage," that the named plaintiffs show that there are other potential plaintiffs interested in the litigation, "has almost never been applied outside of the Eleventh Circuit (of which the Florida Middle District Court is a part)," and has almost never been applied by the courts in the Ninth Circuit. *Delgado v. Ortho-McNeil, Inc.*, 2007 WL 2847238, at *2 (C.D. Cal. Oct. 7, 2007); *see also Neary*, 517 F. Supp. 2d at 622 ("As to defendant's claim that plaintiff has not identified other potential class members who would want to participate in this action, such identification, at this preliminary stage, is not required in the Second Circuit."); *Reab v. Elec. Arts, Inc.*, 214 F.R.D. 623, 629 (D. Colo. 2002) (observing that this requirement seems at odds with the Supreme Court's view that the FLSA should be liberally construed).

This requirement "puts the cart before the horse . . . . It would essentially force plaintiffs or their attorneys to issue their own form of informal notice or to otherwise go out and solicit other plaintiffs. This would undermine a court's ability to provide potential plaintiffs with a fair and accurate notice and would leave significant opportunity for misleading potential plaintiffs." *Heckler v. DK Funding, LLC*, 502 F. Supp. 2d 777, 780 (N.D. Ill. 2007). Furthermore, courts have chastised parties for "engag[ing] in unilateral and unsolicited communications with" potential members of a FLSA collective action. *See Ojeda-Sanchez v. Bland Farms*, 600 F. Supp. 2d 1373, 1379 (S.D. Ga. 2009); *see also Spoerle v. Kraft Foods Global, Inc.*, 253 F.R.D. 434, 442 (W.D. Wis. 2008) (requiring plaintiffs to resend notices to potential class members because notices had been sent out without defendants' input). Therefore, the Court concludes that the limited number of other plaintiffs who have opted into the potential class does not preclude conditional certification of a collective action.

**V.     Conclusion Regarding Conditional Certification**

Under the lenient standard applicable at this first step in the certification process, Plaintiff has made a sufficient showing that he and proposed opt-in plaintiffs are similarly situated because they had similar job duties, that they performed in a similar geographic area, and they were all subject to Defendant's overtime policy. Thus, for notice purposes, the Court will conditionally certify the collective action as Plaintiff has proposed.

At step two of the certification process, the Court may find that the investigation and analysis required to determine whether the plaintiffs are similarly situated is sufficiently cumbersome to defeat a collective action. That potential finding, however, does not preclude notice to potential class members under the more lenient step-one FLSA analysis.

**VI.    Proposed Notice, Consent Form, and Employee Contact Information**

Although the Court conditionally certifies a collective action for purposes of issuing notice, the Court does not approve Plaintiff's proposed notice and consent forms

(Doc. 39, attachment 1) and agrees with many of Defendant's objections to the notice and consent form. (Doc. 45.)

### A. Proposed Notice

The Court agrees with Defendant that the statement that the case has been assigned to the Honorable Bridget S. Bade (Doc. 39, attachment 1, at 1:13.), should be deleted because it could be perceived as judicial endorsement of the action. *See Labrie v. USP Supply Chain Solutions, Inc*., 2009 WL 723599, at *8 (N.D. Cal. Mar. 18, 2009). Additionally, lines 13-14 on page one of the notice do not include the correct caption, because Defendant US Airways, Inc. is omitted. The caption should include US Airways, Inc. as a defendant.

Defendant argues that the notice should be modified to include a statement indicating that the Court has not made any determinations about the merits of this case. The Court agrees that the notice should include such a statement. *See Hoffman v. Securitas Soc. Servs*., 2008 WL 5054684, at *15 (D. Idaho Aug. 27, 2008) (quoting *Adams v. Inter-Con Sec. Sys. Inc.*, 242 F.R.D. 530, 54 (N.D. Cal. 2007) ("[N]otices typically contain a court caption[,] and the bolded statement of neutrality below the caption should make the court's position clear to potential plaintiffs.")). Although the proposed notice includes this statement, it is located at the end of the notice. (Doc. 39, attachment 1, at 6.) The Court agrees that this statement should be moved to the top of the notice, below the caption, to make the Court's position obvious.

The notice must also be modified to include a statement that US Airways denies all liability or wrongdoing as follows: "US Airways denies that it violated the FLSA and claims that security guards were properly paid under the carrier by air exemption of the FLSA." *See Anderson,* 2013 WL 18882370, at *4 (ordering plaintiffs to change collective action notice to state that "Zip denies that it violated the FLSA and claims that sales agents were paid properly under the outside sales exemption of the FLSA").

The Court, however, denies Defendant's request that the phrases "Current and former US Airways employees" or the phrase "and were classified or paid as exempt

- 13 -

1    employees" be deleted from the notice. (Doc. 45 at 7; Doc. 39, attachment 1, at 2:17-18.)
2    This language pertains to the description of the class and is not confusing.

3    The Court also declines to require Plaintiff to delete the second reference to
4    October 24, 2009 on page 2, line 21 of the proposed notice. The second reference to that
5    date may be duplicative, but was likely included for the sake of clarity.

6    The Court also declines to require Plaintiff to replace the term "overtime wages"
7    with the phrase "payment at time and one-half for hours worked in excess of forty hours
8    in a week." (Doc. 45 at 7.) Contrary to Defendant's assertion, a layperson could
9    understand the term "overtime," and that term is more concise than the alternative
10   Defendant proposes.

11   Defendant further objects to the notice's references to defendant and plaintiff in
12   the plural. There is only one party defendant and one named plaintiff. Thus, the notice
13   should be modified to indicate that US Airways, Inc. is the only party defendant and
14   references to "Defendants" or "Defendants'" must be eliminated. Similarly, the reference
15   to Susan Jovanovic and Donald Viatle Jr, as "Plaintiffs" must be removed from the
16   notice. (Doc. 39, attachment 1, at 2:12-13). There is only one named plaintiff.

17   The notice must also be modified to remove any reference to "other current and
18   former Drivers"[5] or "employees having filed consents to sue." (Doc. 39, attachment 1, at
19   2:23-25.) Any references to Plaintiffs, Plaintiffs', "guards" or "they," used in reference
20   to the party who filed suit or otherwise, must be removed from the Notice.

21   Defendant also objects to the ninety-day opt-in period as overly long. (Doc. 39,
22   attachment 1 at 2:8-9.) The Court agrees and finds that a sixty-day opt in period is
23   sufficient and will run from the time the notice is sent, rather than from when it is
24   received. *See Taylor*, 2011 WL 2038514, at *6 (ordering that "potential plaintiffs may
25   'opt-in' to the collective action within sixty (60) days of the mailing of the notice by
26   sending the consent to sue form to plaintiff's counsel").

---

28   [5] This case involves security guards, not drivers. The use of the word drivers appears to be a typographical error.

- 14 -

1    In addition, the notice must be modified to remove any references to Plaintiff
2 having asserted claims other than the FLSA claim for overtime wages alleged in the
3 Complaint.  The Complaint only asserts a claim for overtime under the FLSA and a
4 duplicative claim for declaratory relief based on the same FLSA violation.  Thus, the
5 notice must be modified to delete references to other claims including: "among other
6 claims," "minimum wage" claims, claims for retaliation, and "the FLSA portion."
7 (Doc. 39, attachment 1, at 2:16, 3:15, 4:18-19, 4:24.)

8    The Court also agrees with Defendant that the "Legal Effects" section of the
9 notice must be amended to advise potential opt-in plaintiffs that they may be liable for
10 costs and attorney's fees if Defendant prevails.  *See Adams v. Inter-Con. Sec. Sys., Inc.*,
11 242 F.R.D. 530, 540 (N.D. Cal. 2007) (this "is a fact that should be included in the notice
12 to inform the potential plaintiffs").

13    Defendant argues the section regarding the legal effect of not joining the lawsuit is
14 incomplete because it only suggests that individuals who do not opt in should consult
15 with an attorney, but does not sufficiently warn them that their claims might be time
16 barred and it does not include contact information for counsel in this case.  (Doc. 45 at
17 10; Doc. 39, attachment 1, at 4:22-25, 5:1-7.)  The Court finds that the "No Legal Effect
18 in Not Joining this Lawsuit" section is sufficient.  It states that there may be "time limits
19 in which to file an individual FLSA claim," and it states that if an individual "choose[s]
20 not to join the lawsuit, [he] should consult an attorney to obtain further information about
21 the time limits that may apply to [him]."  (Doc. 39, attachment 1, at 5:4-7.)  The Court
22 will not require Plaintiff to add counsels' contact information in this section.

23    Finally, Defendant argues that the "Further Information" section should be deleted
24 or should be amended to include contact information for Defendant's counsel.  (Doc. 45
25 at 10; Doc. 39, attachment 1, at 5:9-12.)  This section advises individuals that they may
26 contact Plaintiff's counsel regarding deadlines for filing a consent to sue or questions
27 about the lawsuit.  The Court will direct Plaintiff to delete this section because it could be
28 construed as suggesting that potential plaintiffs should call Plaintiff's counsel.  *See*

1 *Wertheim v. State of AZ*, 1993 WL 603552, at *6 (D. Ariz. Sept. 30, 1993) (directing
2 plaintiff in FLSA putative collective action to omit the last paragraph of the notice about
3 contacting plaintiff's law firm for more information).

### B. Proposed Consent Form

Defendant also raises several objections to the proposed consent form. As with the notice, the Court agrees with Defendant that the statement that the case has been assigned to the Honorable Bridget S. Bade (Doc. 39, attachment 1, at 7:13.), should be deleted because it could be perceived as judicial endorsement of the action. *See Labrie*, 2009 WL 723599, at *8. Additionally, lines 13-14 on the first page of the consent form do not include the correct caption, because they omit Defendant US Airways, Inc. The caption should include US Airways, Inc. as a defendant.

As with the notice, the consent form should be modified to refer to singular plaintiff and singular defendant. The reference to "class representatives" should be replaced with Baltazar Eduardo Barrera, the only named Plaintiff in this case.

### C. Current and Former Employees' Contact Information

Finally, Plaintiff asks the Court to direct US Airways to provide a list, in electronic importable format, within five days of its Order of "all current and former security guards who worked for US Airways Group, Inc., from any time between October 24, 2009 and the present." (Doc. 39 at 10.) Defendant has not objected to this request. Therefore, the Court grants Plaintiff's request, but will allow Defendant until September 13, 2013 to provide this information. Additionally, because Defendant US Airways Group, Inc. is no longer a party to this action, the Court will order Defendant to provide this information only for US Airways, Inc.

Accordingly,

**IT IS ORDERED** that Plaintiff's motion to conditionally certify a collective action of all current and former security guards who worked for US Airways, Inc. at any time between October 24, 2009 and the present (Doc. 39) is **GRANTED**. On or before **September 20, 2013**, the parties shall jointly file a revised proposed notice and a revised

consent form that comply with this Order and a jointly proposed method of providing notice (such as U.S. mail) to the potential class members.

**IT IS FURTHER ORDERED** that by **September 13, 2013**, Defendant must provide Plaintiff's counsel with an electronic, importable list of the names and last known mailing addresses of all current and former security guards who worked for U.S. Airways, Inc. at any time between October 24, 2009 and the present.

**IT IS FURTHER ORDERED** that by **September 20, 2013**, the parties shall file an Amended Joint Case Management Plan that sets forth proposed deadlines to send the notice and consent form to potential class members, to complete any discovery related to certification issues, to file any motions directed at that issue, to complete fact and expert discovery, and to file dispositive motions.

Dated this 30th day of August, 2013.

Bridget S. Bade
United States Magistrate Judge